# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | : Chapter 11 |
| | : |
| SAMSON RESOURCES CORPORATION, *et al.*, | : Case No. 15-11934-CSS |
| | : |
| Reorganized Debtors. | : (Jointly Administered) |
| | : |
| CALVIN WILLIAMS, | : |
| | : Civ. No. 16-1124-RGA |
| Appellant, | |
| v. | : |
| | : |
| SAMSON RESOURCES CORPORATION, *et al.*, | : |
| | : |
| Appellees. | : |

## **MEMORANDUM**

Pending before this Court is a *pro se* appeal from a June 8, 2016 Order (B.D.I. 1024)[1] entered by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which overruled Appellant's objection to the Debtors' motion to approve the sale of certain assets as part of their Chapter 11 reorganization. For the reasons set forth below, the appeal is dismissed for lack of subject matter jurisdiction.

1. **Background.** On September 16, 2015, Samson Resources Corporation, together with certain affiliates ("Debtors"), filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. On February 13, 2017, the Bankruptcy Court entered an order confirming the Debtors' plan of reorganization. (B.D.I. 2019).

---

[1] The docket of the chapter 11 cases, captioned *In re Samson Resources Corp., et al.*, Case No. 15-11934-CSS (Bankr. D. Del.), is cited herein as "B.D.I. __."

2. As part of their reorganization, on January 29, 2016, Debtors filed a motion seeking authority to sell certain assets (B.D.I. 621) ("Sale Motion"), including the Debtors' working interests in certain oil and gas leases.

3. Appellant is a *pro se* individual who filed a proof of claim in the Debtors' Chapter 11 cases (Claim No. 732). Appellant believes that Debtors do not hold a valid lease on certain land that is owned by him along with certain of his relatives who are descendants and heirs of William Seamster (collectively, "Seamster Heirs"). On February 12, 2016, Appellant filed an objection to the Sale Motion on behalf of himself and ten family members, alleging that the claims of the Seamster Heirs precluded the Debtors from being able to sell certain interests subject to and free and clear of liens. (B.D.I. 665). On March 15, 2016, Appellant filed a second objection to the asset sale, and Debtors filed a supplement in further support of the Sale Motion on March 23, 2016. (B.D.I. 770, 795). On April 26, 2016, Appellant filed a letter in further support of his position. (B.D.I. 893).

4. On June 7, 2016, the Bankruptcy Court held an evidentiary hearing on Appellant's objection to the Sale Motion, at which time the parties presented evidence and argument in support of their positions. (D.I. 22, 6/7/16 Hr'g Tr. at 7:1-60:3). Debtors presented evidence and testimony setting forth, *inter alia*, the difference between the Debtors' working interest in the assets and Appellant's royalty interest in the assets;[2] the continued validity of the lease and the Debtors' ownership of a working interest thereunder; and the fact that the proposed sale did not include Appellant's royalty interest. (*See id.* 15:22-41:3). Appellant made various

---

[2] Debtors' witness testified generally that a typical oil and gas lease creates and governs separate interests in the wells. (*See* D.I. 22, 6/7/16 Hr'g Tr. at 17:14-18:10). Generally speaking, the owner of the "working interest" has the right to come onto the property to drill and operate the well. The owner of the "royalty interest" is the mineral owner who receives a portion of the revenue generated by oil and gas produced by the well. (*See id.*)

2

arguments, focusing on his belief that royalty payments were not properly made (*see id.* at 44:24-45:3) and that the lease was invalid because it had expired by its own terms (41:18-44:19; 50:19-51:12). Following argument, the Bankruptcy Court ruled from the bench. (*See id.* at 60:4-67:4). As the Bankruptcy Court explained, "[W]hat's in front of me today is whether or not the Debtors can sell their alleged working interest in the Seamster tract to a third-party. What's not in front of me today is anything to do with the royalty payments . . . The royalty issue and who owns the working interests are two separate things." (*Id.* at 60:7-60:20). The Bankruptcy Court determined, based on the facts and evidence presented, that "there is a valid lease" and that "the Debtor has the ability to sell that working interest." (*Id.* at 65:9-65:12).[3] The next day, the Bankruptcy Court entered the Order overruling Appellant's objection and approving Debtors' Sale Motion with respect to the assets. (B.D.I. 1024).

5. On July 11, 2016, Appellant filed a *Motion to Present New Evidence* (B.D.I. 1154) ("First Reconsideration Motion"). The Bankruptcy Court treated this as a motion for reconsideration under Federal Rule of Civil Procedure 59, held a hearing on September 7, 2016, and denied the First Reconsideration Motion the same day. (B.D.I. 1325). On September 15, 2016, Appellant filed a *Motion to Alter or Amend the Judgment Pursuant to Fed. R. Civ. P. 59(e) to Prevent Manifest Injustice* (B.D.I. 1355), and subsequently filed a revised version of same on October 5, 2016 (B.D.I. 1446) ("Second Reconsideration Motion"). The Bankruptcy Court held

---

[3] The Bankruptcy Court also set forth alternative bases for overruling Appellant's objection to the sale. "In the alternative, the Court could find . . . the fact that the beneficiaries of the Seamster lease received and continue to receive royalty payments prior to 1959 and have continued to receive them to this day, that under Louisiana law, that constitutes sufficient evidence that there's a valid lease." (*Id.* at 65:13-65:19). "That is not my primary ruling. My primary ruling is factual in nature. My secondary ruling, only to the extent my primary ruling is wrong, would reach the same result. Those checks have been received, they've been cashed; as a legal matter that's sufficient to establish the lease." (*Id.* at 65:20-65:25). The Bankruptcy Court also observed that the relevant statute of limitations provided a third basis for overruling Appellant's objection to the sale. (*See id.* at 66:1-66:20).

3

another hearing to consider the Second Reconsideration Motion on November 16, 2016, and again denied Appellant's request for relief by order entered the same day. (D.I. 22, 11/16/16 Hr'g Tr. at 42:25-60:5; B.D.I. 1663).

6. On December 5, 2016, Appellant filed his Notice of Appeal with the Bankruptcy Court. (D.I. 1). On February 9, 2017, the Court held a telephonic status conference, at which time the parties agreed to a briefing schedule to address lack of subject matter jurisdiction, equitable mootness, as well as the merits of the appeal. (*See* D.I. 18, 2/9/17 Hr'g Tr.). The parties each made timely submissions, and this matter is fully briefed. (D.I. 21, 22, 31, 32, 46).[4]

7. Debtors' opening brief raises several arguments in support of dismissal of the appeal and affirmation of the Order. Debtors argue that the appeal must be dismissed for lack of subject matter jurisdiction because it was filed nearly three months after the 14-day appeal deadline set by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8002(a)(1). (*See* D.I. 21 at pp. 6-8). Debtors further argue that even if the Court had jurisdiction to consider this appeal, the rights to operate wells underlying the asset sale have already been sold, and the doctrine of equitable mootness also requires dismissal of the appeal. (*See id.* at pp. 2, 8-11). According to Debtors, Appellant has suffered no injury or prejudice by virtue of the sale of the Debtors' working interest in the wells, which is distinct from the royalty interest owned by Appellant, which royalty interest Appellant continues to own. (*See id.* at p. 2). Finally, Debtors

---

[4]Appellant has filed numerous letters, supplements, and requests in addition to the briefing ordered by the Court, including: a letter request for the appointment of a forensic accountant (D.I. 16); a motion to present the appeal orally, in lieu of briefing (D.I. 19; denied at D.I. 20); a motion for default judgment (D.I. 29); a motion to reject Debtors' opening brief as untimely (D.I. 34); a motion for summary judgment (D.I. 36); a motion to compel payment from the Debtors (D.I. 51); and many other notices pertaining to arguments and evidence that Appellant would like the Court to consider in connection with the appeal (*see* D.I. 14, 15, 35, 38, 39, 47, 49, 50, 52, 53, 56, 57, 58). To the extent not already denied, these requests are dismissed as moot in connection with the dismissal of the appeal.

4

argue that the Bankruptcy Court correctly concluded that Appellant's tort and contract claims are meritless and barred by state law. (*See id.* at pp. 11-12). Appellant's brief asserts essentially the same arguments presented to the Bankruptcy Court below: that the lease was unconscionable from the outset and the product of fraud; that royalty payments were not properly made under the lease; that the lease has expired under its own terms; and that the Debtors have been unjustly enriched by virtue of the sale. (*See* D.I. 25, 32). Appellant's brief does not address Debtors' arguments that the appeal was untimely and is now equitably moot. (*See id.*)

8. **Jurisdiction and Standard of Review.** The Court has appellate jurisdiction over all final orders and judgments from the Bankruptcy Court. *See* 28 U.S.C. § 158(a)(1). Bankruptcy Rule 8002(a)(1) provides: "Except as provided in subdivisions (b) and (c), a notice of appeal must be filed with the bankruptcy clerk within 14 days after entry of the judgment, order, or decree being appealed." Fed. R. Bankr. P. 8002(a)(1). Subdivision (b)(1)[5] provides, "If a party timely files in the bankruptcy court any of the following motions, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion," and then lists the following motions: (A) to amend or make additional findings; (B) to alter or amend the judgment under Bankruptcy Rule 9023; (C) for a new trial under Bankruptcy Rule 9023; or (D) for relief from judgment under Bankruptcy Rule 9024. *See* Fed. R. Bankr. P. 8002(b)(1). Thus, a party may toll the 14-day deadline by timely filing a motion to alter or amend the judgment under Bankruptcy Rule 9023, which incorporates Federal Rule of Civil Procedure 59. *See* Fed. R. Bankr. P. 8002(b)(1)(B). The Third Circuit has held that the failure to appeal a bankruptcy court's ruling to the district court within the time period established by

---

[5] Subdivision (c) is irrelevant here, as it refers to rules for claimants who are incarcerated. *See* Fed. R. Bankr. P. 8002(c).

5

Bankruptcy Rule 8002 deprives the district court of jurisdiction to hear an appeal. *See In re Caterbone*, 640 F.3d 108, 113 (3d Cir. 2011).

9. **Discussion.** Although the Bankruptcy Rules alone cannot create or withdraw jurisdiction, Congress has limited the jurisdiction of this Court to hear an appeal from a final order of a Bankruptcy Court by specifically incorporating the time limits of Rule 8002 in the jurisdictional grant to the district courts to hear appeals from bankruptcy courts. Section 158(c)(2) of title 28 provides that "an appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts **and in the time provided by Rule 8002 of the Bankruptcy Rules**." 28 U.S.C. § 158(c)(2) (emphasis added).

10. The Third Circuit has held on several occasions that the time limits of Bankruptcy Rule 8002 are jurisdictional and deprive an appellate court of subject matter jurisdiction if the appellant fails to comply. *See Caterbone*, 640 F.3d at 112-13 (citing *S'holders v. Sound Radio, Inc.*, 109 F.3d 873, 879 (3d Cir. 1997); *Whitemere Dev. Corp., Inc. v. Cherry Hill Twp.*, 786 F.2d 185, 187 (3d Cir. 1986); *In re Universal Minerals Inc.* 755 F.2d 309, 311 (3d Cir. 1985)). In *Caterbone*, the court stated that:

> [b]ecause Section 158 . . . specifies the time within which an appeal must be taken – i.e., "in the time provided by Rule 8002" – that requirement is jurisdictional . . . Here, even though it is a bankruptcy rule that specifies the time within which an appeal must be filed, the statutory incorporation of that rule renders its requirement statutory and, hence, jurisdictional and non-waivable.

*Id.* at 111-12.

11. This appeal must be dismissed because it was not timely filed. Here, the order Appellant is appealing from was entered on June 8, 2016. As noted above, a party may toll the 14-day deadline by timely filing a motion to alter or amend the judgment under Bankruptcy Rule 9023. *See* Fed. R. Bankr. P. 8002(b)(1)(B). In such cases, the time to file an appeal runs "from

6

entry of the order disposing of the last such remaining motion." *See* Fed. R. Bankr. P. 8002(b). Setting aside that Bankruptcy Rule 9023 actually imposes a 14-day deadline to file a motion to alter or amend (as opposed to the 28-day deadline contained in Federal Rule of Civil Procedure 59), Appellant filed the First Reconsideration Motion on July 11, 2016,[6] and the Bankruptcy Court denied it on September 7, 2016. The 14-day deadline therefore began on September 7, 2016, in accordance with Bankruptcy Rule 8002(b). As Debtors correctly argue, the fact that the Second Reconsideration Motion was filed within 14 days of the order denying the First Reconsideration Motion does not control. (*See* D.I. 21 at p. 7). "[A] second or successive motion under Rule 59(e), which again seeks 'relief from the underlying judgment of dismissal,' must still be filed within the [statutory] window 'that open[s] following the entry of judgment.'" *Lopez-Rosario v. Programa Seasonal Head Start,* 140 F. Supp. 3d 214, 218 (D.P.R. 2015) (quoting *Fisher v. Kadant, Inc.*, 589 F.3d 505, 511 (1st Cir. 2009)); *see also Montalvo Rios v. Municipality of Guaynabo*, 2011 WL 2518631, at *2 (D.P.R. June 24, 2011) (finding district courts lack authority to consider second motion for reconsideration brought outside time limit after the entry of judgment, and also quoting *Fisher*: "[t]he fact that it was filed within [the statutory window following] the denial of the first motion for reconsideration makes no difference"). Because the Second Reconsideration Motion was filed more than 14 days after the June 8, 2016 Order, the Second Reconsideration Motion was untimely, and it did not extend the deadline under Bankruptcy Rule 8002 to file a notice of appeal. *See In re Memorex Telex Corp.,* 241 B.R. 841, 844 (D. Del. 1999) ("an untimely filed motion for reargument or motion to alter or amend judgment will not toll the time for an appeal.")

---

[6] Debtors describe this motion as a "timely filed motion for reconsideration." (D.I. 21 at 5). Twenty-eight days from June 8, 2016, would be July 6, 2016; fourteen days would be June 22, 2016. The motion's certificate of service stated that it was served by mail on June 30, 2016. (B.D.I. 1154-2). In light of my other conclusions, I do not have to decide when exactly the motion needed to be served and/or filed.

7

12. As Debtors correctly argue, even assuming that the 14-day deadline began to run upon entry of the November 16, 2016 order denying the Second Reconsideration Motion, the deadline to **file** the notice of appeal would have expired on November 30, 2016. *See* Fed. R. Bankr. P. 8002(a)(1). Here, the notice of appeal was not filed until December 5, 2016, after the deadline imposed by Bankruptcy Rule 8002.

13. Appellant does not address the untimeliness of the appeal, nor does he set forth any basis for excusable neglect. That said, Appellant's briefing is replete with references to poverty and inability to afford legal counsel.[7] (*See e.g.,* D.I. 32 at pp. 2-3). "[Appellant] proceeds *pro se*, and accordingly, we construe his pleadings liberally." *Laughlin v. Peck,* 552 Fed. App'x 188, 190 (3d Cir. 2014) (citing *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). Under Bankruptcy Rule 8002(d), the Bankruptcy Court "may extend the time to file a notice of appeal upon a party's motion that is filed: (A) within the time prescribed by this rule; or (B) within 21 days after that time, if the party shows excusable neglect." Fed. R. Bankr. P. 8002(d)(1). Bankruptcy Rule 8002(d) requires that, even in cases of excusable neglect, the issue must be raised and a motion filed within 21 days following the expiration of the 14-day appeal period. Although Appellant could have asked the Bankruptcy Court to extend the time to appeal upon a showing of excusable neglect by filing a motion within 21 days after the time for taking an appeal had expired, Appellant did not do so. Here, no motion for relief or showing of excusable neglect was ever made to the Bankruptcy Court, and "[t]he rule does not allow a party to claim excusable neglect after the [time period] ha[s] expired." *Caterbone,* 640 F.3d at 113-14. The Court is therefore without jurisdiction to consider the appeal regardless of whether

---

[7] The Court granted Appellant's application for leave to proceed without paying fees or costs in connection with the appeal. (*See* D.I. 1, 4).

8

Appellant might demonstrate excusable neglect. *See, e.g., Siemon v. Emigrant Savings Bank*, 421 F.3d 167, 169 (2d Cir. 2005).

14. **Conclusion.** While the Court understands the challenges of pursuing relief on a *pro se* basis, the jurisdictional defect is non-waivable. Having failed to file a timely notice of appeal and having failed to make a showing of excusable neglect for the untimely filing within the time frame set forth in Bankruptcy Rule 8002(d)(1)(B), this Court lacks jurisdiction to hear the appeal, and the appeal must be dismissed.[8]

15. A separate order will be entered.

Entered this 30 day of August, 2017.

                                                         *Richard G. Andrews*
                                                         United States District Judge

---

[8] As the Court is without jurisdiction to consider the appeal, the Court has no occasion to address the equitable mootness and other arguments raised in Debtors' briefs. (*See* D.I. 21, 46).

9